UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DREIEN OPPORTUNITY PARTNERS,
LLC,
                              Plaintiff,

                   -v-

AVISON YOUNG – NEW YORK, LLC,
JOHN BRALOWER, PETER STEIER,
and JUSTIN PIASECKI,
                              Defendants.

18-CV-10087 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      In 2016, Dreien Opportunity Partners won a bid to purchase the corporate headquarters of J.C. Penney in Plano, Texas. To handle the financing for the deal, Dreien hired Avison Young, a real estate services firm. The transaction did not go smoothly, and Dreien ended up in ongoing litigation with one would-be lender. Dreien now sues Avison Young, alleging that its handling of the financing was deficient under New York tort and contract law. Avison Young has moved to dismiss for failure to state a claim. For the reasons that follow, the motion to dismiss is denied.

**I.    Background**

      The following facts are taken from the operative complaint and, for purposes of this motion to dismiss, are assumed to be true.

      Plaintiff Dreien Opportunity Partners, LLC, is a real estate developer that acquires, develops, and resells properties in the Dallas–Fort Worth area. (*See* Dkt. No. 29 ("Compl.") ¶¶ 1, 10.) Defendant Avison Young – New York, LLC is a real estate services firm that, among other things, provides capital market services like securing commercial mortgage financing. (*See*

1

Compl. ¶ 11.) Avison Young's employees include Defendants John Bralower, Peter Steier, and Justin Piasecki. (*See* Compl. ¶ 12.)

In February 2016, J.C. Penney Company Inc. announced plans to sell its corporate headquarters, located in Plano, Texas. (*See* Compl. ¶ 15.) Dreien was the successful bidder, at over $350 million. (*Id.*) In order to close, Dreien needed to secure financing to cover acquisition costs, closing costs, and other expenses — totaling approximately $460 million — by an initial closing deadline of October 7, 2016. (*Id.*) (The deadline was eventually extended to December 30, 2016. (*See* Compl. ¶ 23.)) To do so, Dreien hired Avison Young. (Compl. ¶ 16.)

Under the agreement between Dreien and Avison Young, Avison Young was responsible for creating a proposed "capital stack" — that is, a proposal that distributes the total capital required for the project across various levels or divisions. (*See* Compl. ¶ 19.) Avison Young was also tasked with negotiating and obtaining one or more financing sources for each level of the proposed capital stack. (*Id.*) Accordingly, Avison Young, through Bralower, Steier, and Piasecki, created a proposed capital stack and began soliciting interest from investors to fund the various levels of the stack. (*See* Compl. ¶¶ 24–25.)

Och-Ziff, a subsidiary of the asset management firm Och-Ziff Capital Management Group LLC, expressed interest in supplying $200 to $250 million in financing. (Compl. ¶¶ 14, 26.) Another firm, Cindat Capital Management, Ltd., expressed interest in participating in the capital stack alongside Och-Ziff. (*See* Compl. ¶ 27.)

In October 2016, Och-Ziff presented Avison Young with a draft term sheet proposing that Och-Ziff would finance $250 million of the capital stack and that an affiliate of Cindat would finance an additional $80 million. (*See* Compl. ¶ 31.) The term sheet was largely nonbinding, with the exception of a handful of provisions that purported to bind only Dreien.

(*See* Compl. ¶ 33.)  One of those provisions, the Good-Faith Deposit provision, required a $300,000 cash advance from Dreien.  (Compl. ¶ 34.)  Another provision, the Break-Up Fee provision, provided that "in the event that [Dreien] obtains a loan for the Property from anyone other than an affiliate of [Och-Ziff] prior to December 31, 2016, then [Dreien] must pay a 'Break-Up Fee' to [Och-Ziff] in the amount of $2,000,000."  (Compl. ¶ 35.)

Avison Young, through Bralower, Steier, and Piasecki, reviewed and commented on the term sheet and presented it to Dreien with the advice that Dreien should sign.  (*See* Compl. ¶¶ 29, 42.)  They never advised Dreien that a $2 million break-up fee might be excessive.  (Compl. ¶ 40.)  Accordingly, Dreien signed the term sheet on November 4, 2016.  (*Id.*)

Three weeks later, Cindat declared that it would not provide any financing, which jeopardized the funding from Och-Ziff as well.  (*See* Compl. ¶ 44.)  In search of additional financing, Dreien itself reached out to Beal Bank, a bank that had expressed early interest in providing financing for the deal.  (*See* Compl. ¶ 46.)  With financing from Beal Bank, Dreien was able to close the deal before the December deadline.  (*Id.*)

Avison Young requested its commission on the transaction, which Dreien "reluctantly" paid.  (Compl. ¶ 51.)  The commission amounted to approximately $5.5 million.  (*Id.*)

In 2017, Och-Ziff filed an action for breach of contract in Texas state court, seeking the $2 million break-up fee from Dreien.  (Compl. ¶ 52.)  Och-Ziff also sought to retain the $300,000 good-faith deposit.  (*Id.*)  The litigation is ongoing.  (*Id.*)

Dreien brought this action against Avison Young and its employees Bralower, Steier, and Piasecki (collectively, "Avison Young").  Dreien sues under causes of action for professional negligence, common-law negligence, breach of fiduciary duty, breach of contract, and breach of the implied duty of good faith and fair dealing.  (*See* Compl. ¶¶ 54–79.)  Dreien seeks (1)

3

compensation for the legal fees Dreien has incurred in the lawsuit against Och-Ziff, (2) an award of $5.5 million (the commission that Dreien paid to Avison Young), and (3) costs, attorney's fees, and interest. (*See* Compl. at 23.) Dreien also conditionally seeks an award of $2.3 million, consisting of the $2 million break-up fee and the $300,000 good-faith deposit, in the event that Dreien is found liable to Och-Ziff in the Texas litigation. (*Id.*)

Avison Young has moved to dismiss. (*See* Dkt. No. 36). In response, Dreien has moved to strike certain materials that Avison Young submitted with its motion to dismiss. (*See* Dkt. No. 40.)

## II. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. Discussion

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)[1]

Dreien's complaint asserts five causes of action — for professional negligence, common-law negligence, breach of fiduciary duty, breach of contract, and breach of the implied duty of

---

[1] Plaintiff Dreien is a limited liability company (LLC) and all of its members are citizens of Texas. Defendant Avison Young is also an LLC and none of its members are citizens of Texas. Therefore the parties are completely diverse. The matter in controversy exceeds $75,000, excluding interest and costs. (*See* Compl. ¶ 4.)

4

good faith and fair dealing. (*See* Compl. ¶¶ 54–79.) The first three claims sound in tort; the last two in contract. Avison Young seeks dismissal of all five claims.

For the reasons that follow, Avison Young's motion to dismiss is denied in its entirety.

**A.     Dreien's Tort Claims.**

Avison Young argues that Dreien's tort claims must be dismissed because Dreien cannot establish causation. (*See* Dkt. No. 38 at 15–19.) A causal nexus between breach of duty and damages is, indeed, a necessary element of each of Dreien's tort claims. Under New York law,[2] a claim of professional negligence requires a showing of both direct and proximate causation. *See MF Global Holdings, Ltd. v. PricewaterhouseCoopers LLP*, 199 F. Supp. 3d 818, 829–830 (S.D.N.Y. 2016); *Georgetti v. United Hosp. Med. Ctr.*, 611 N.Y.S.2d 583 (N.Y. App. Div. 2d Dep't 1994). Garden-variety negligence, of course, also requires a showing of causation. *See, e.g.*, *Rodriguez v. City of New York*, 76 N.Y.S.3d 898, 903 (N.Y. 2018). And for a claim for breach of fiduciary duty, Dreien must establish that any breach of duty was "the direct and proximate cause of the losses claimed." *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (N.Y. App. Div. 1st Dep't 2002).

Dreien's complaint alleges five breaches of duty by the defendants:

> (i) failing to fully discharge their obligation to deliver multiple options for financing each component of the required capital stack; (ii) failing to deliver even one potential lender for the senior mezzanine component of the capital stack; (iii) failing to deliver committed financing partners for each component of the capital stack necessary to close the transaction; (iv) failing to advise Dreien adequately in connection with the Och Ziff Term Sheet; and (v)

---

[2] The agreement between Dreien and Avison Young contains a choice-of-law provision that identifies New York law as applicable. (*See* Dkt. No. 29-1 at 5.) Thus, the substantive law of New York governs this case. *See, e.g.*, *AEI Life LLC v. Lincoln Ben. Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018).

5

> failing otherwise to perform in accordance with industry and professional customs and standards.

(Compl. ¶ 58; *see also* Compl. ¶¶ 62, 66.)  Avison Young argues that none of these alleged breaches can be causally linked to Dreien's injuries.

For the first three alleged breaches of duty, Avison Young contends that direct (or "but-for") causation cannot be established because none of them could have caused the loss of Cindat, which was the event that precipitated the collapse of the Och-Ziff deal.  (*See* Dkt. No. 38 at 16–17.)  In other words, Avison Young argues that Dreien cannot establish that, but for any of these three breaches, Dreien would have avoided litigation with Och-Ziff.

Dreien, of course, disagrees.  Its complaint alleges that Avison Young "failed to provide Dreien with multiple options for each component of the capital stack" (Compl. ¶ 37) and that, in particular, Avison Young "did not identify any other potential senior debt lenders and did not, therefore, provide Dreien with any alternatives to Och-Ziff" for that portion of the capital stack (Compl. ¶ 29).  Dreien alleges that Avison Young therefore failed to "negotiat[e] the best possible financing package."  (Compl. ¶ 37.)  In other words, Dreien alleges that if Avison Young had complied with its obligation to "deliver *committed* financing partners for each component of the capital stack necessary to close the transaction" (Compl. ¶ 58 (emphasis added)), then Dreien would have ended up with financing from a source other than Och-Ziff, which means that the subsequent litigation with Och-Ziff would have been entirely avoided.  It remains to be seen whether Dreien can prove the existence of this causal connection at trial.  But this allegation of but-for causation suffices to survive a motion to dismiss.  *See Malta v. Fox Horan & Camerini, LLP*, No. 17-CV-3228, 2018 WL 1276881, at *4 (S.D.N.Y. Mar. 12, 2018).

For the last two alleged breaches of duty, Avison Young contends that proximate causation cannot be established because Dreien's managing partner and CEO, Samuel Ware,

6

signed the agreement with Och-Ziff. (Dkt. No. 38 at 17.) Under New York law, Avison Young argues, "where a party signs an agreement (and no fraud is alleged), the law deems him bound to have read and fully understood the agreement's terms and contents, such that he cannot later claim he was not properly advised of the agreement's terms." (*Id.*) That correctly states the law. *See, e.g.*, *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014). But it fundamentally misunderstands the allegations in the complaint. Dreien's complaint does not allege that Avison Young failed to inform Dreien accurately of the *contents* of the agreement, including the inclusion of the Break-Up Fee provision. Rather, Dreien's complaint alleges that Avison Young failed to advise Dreien that the Break-Up Fee provision was "not customary in the industry," "was grossly excessive," and "should not have been included in the agreement." (Compl. ¶¶ 39–40.) The fact that Ware signed the agreement is therefore irrelevant. None of the cases cited by Avison Young suggest that Ware's signature immunizes Avison Young for its alleged failure to advise Dreien properly about matters like industry custom. At best, the signature would immunize Avison Young only from the claim that Dreien "fail[ed] to read or understand" the contract or was otherwise ignorant about "the contents of the agreement[]." *See Marciano*, 14 F. Supp. 3d at 330 (internal quotation marks omitted).

The factual allegations in Dreien's complaint indicate a plausible entitlement to relief on the tort claims. Avison Young's motion to dismiss the first three counts of Dreien's complaint is therefore denied.

### B. Dreien's Contract Claims.

Dreien's complaint asserts claims for breach of contract and for breach of the implied duty of good faith and fair dealing. Avison Young seeks dismissal of both claims.

For the breach of contract claim, Avison Young first disputes the claim that it failed to perform under the contract. This dispute centers around Dreien's allegation that Avison Young

7

failed to identify "financing sufficient to close the transaction." (Compl. ¶ 72.) In particular, Dreien alleges that Avison Young "never identified a senior mezzanine lender," which created a shortfall of $40–50 million. (Compl. ¶ 32.)

Avison Young argues that this allegation is "implausible" and that, by mid-November, it had set "in motion" sufficient financing to close the transaction. (Dkt. No. 38 at 21.) As evidence, Avison Young attaches to its motion to dismiss an email from Steier on November 14, 2019, indicating that Avison Young had located "three potential sources for the senior mezzanine financing." (*Id.* (citing Dkt. No. 37-6 at 2).) Avison Young also attaches an email from Dreien's CEO to the Avison Young team in the final weeks of the deal thanking them for their "great work." (Dkt. No. 38 at 22 (quoting Dkt. No. 37-7 at 2).) These emails, Avison Young argues, render Dreien's allegation of breach of contract "implausible." (*Id.*)

The Court declines Avison Young's invitation to consider materials outside the complaint.[3] "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006). This rule admits of a few exceptions, but none of them applies here. Neither of the emails cited by Avison Young is "attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Nor are they documents "upon which [the complaint] *solely* relies and which [are] *integral to the complaint*." *Id.* (first alteration in original). Nor are they documents that the plaintiff "had knowledge [of] and relied on in

---

[3] When presented with material outside the pleadings, a district court may, at its discretion, consider the material by converting a motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d). But this option requires giving the parties an opportunity to conduct appropriate discovery and to submit additional supporting material under Federal Rule of Civil Procedure 56. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).[4] Thus, the emails — along with any other extrinsic material — are "excluded" from consideration. Fed. R. Civ. P. 12(d).[5]

Avison Young also argues that the breach of contract claim is implausible because Dreien's CEO voluntarily signed the Och-Ziff agreement "to move forward with that financing program." (Dkt. No. 38 at 21.) Dreien's CEO would not have signed the agreement, Avison Young argues, if Dreien had been unhappy with Avison Young's performance. But at best, this argument creates a dispute of fact about whether Avison Young indeed performed under the contract. Resolution of this factual dispute would be inappropriate at the motion to dismiss stage.

Separately, Avison Young argues that Dreien cannot recover the $5.5 million commission because of the voluntary payment doctrine. The doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003). But at this stage of litigation, dismissal under the doctrine would be premature. Because the voluntary payment doctrine is an affirmative defense, dismissal would be appropriate only if the necessary facts appeared on the face of the complaint.

---

[4] Avison Young appears to believe that the emails qualify for this exception because Dreien "had actual notice of . . . these documents before filing the [first amended complaint]." (Dkt. No. 43 at 4.; *see also* Dkt. No. 42 at 4.) But this misunderstands the law. "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[5] Dreien has moved to strike both these documents and other materials filed with Avison Young's motion to dismiss — presumably under Federal Rule of Civil Procedure 12(f). (*See* Dkt. No. 40.) But Rule 12(f) only authorizes a court to strike matters "from a pleading." Avison Young's motion to dismiss is not a "pleading." The motion to strike is therefore denied.

*See Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009). Here, it is unclear from the face of the complaint whether the payment was made voluntarily or whether it was made under economic duress. (*See* Compl. ¶ 51 (alleging that Dreien paid the commission "reluctantly" "[i]n order not to jeopardize [the] transaction").) Dismissal under the voluntary payment doctrine would therefore be inappropriate.

Next, for both contract claims, Avison Young argues that it is entitled to the commission, regardless of performance, because the contract granted Avison Young the exclusive right to obtain financing on behalf of Dreien. Under New York law, "where an exclusive right of sale is given a broker, the principal cannot make a sale [herself] without becoming liable for the commissions." *Morpheus Capital Advisors LLC v. UBS AG*, 15 N.E.3d 1187, 1191 (N.Y. 2014) (alteration in original) (quoting *Slattery v. Cothran*, 206 N.Y.S. 576, 578 (N.Y. App. Div. 4th Dep't 1924)). According to Avison Young, the contract therefore "entitled Avison Young to a fully-earned commission upon Dreien's closing of *any* lending deal for the J.C. Penny [sic] headquarters property, no matter the source and no matter if Dreien's CEO brought Beal Bank to the deal." (Dkt. No. 38 at 23 (emphasis added).)

But even under the assumption that Avison Young possessed the exclusive right to negotiate financing, dismissal on these grounds would still be inappropriate. If Avison Young had "material[ly] breach[ed]" the contract — by failing to identify a senior mezzanine lender, for example (*see* Compl. ¶ 32), or by engaging in conduct that would "justify [Dreien's] premature termination" of the contract — Dreien would have had "the right to unilaterally terminate the contract," which would mean that Avison Young would "not [be] entitled to a commission." *Robert Cohn Assocs. v. Kosich*, 881 N.Y.S.2d 235, 237 (N.Y. App. Div. 3d Dep't 2009). In other words, the issue turns in part on whether Avison Young's conduct amounted to material

10

breach. That question cannot be resolved at this stage of litigation. *See, e.g.*, *Magi Comm'ns, Inc. v. Jac-Lu Assocs.*, 410 N.Y.S.2d 297, 299 (N.Y. App. Div. 1st Dep't 1978) ("Materiality of a breach is for trial.").

Finally, Dreien alleges that Avison Young breached the duty of good faith and fair dealing by failing to present Dreien with "multiple offers for each capital stack component." (Compl. ¶ 78.) This claim fails, Avison Young argues, because the contract required only one offer for each capital stack component. (Dkt. No. 38 at 24.) The duty of good faith and fair dealing, however, "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004) (internal quotation marks omitted), even if such conduct would not "breach[] the terms of the contract in a technical sense," *CSI Investment Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) (internal quotation marks omitted). Thus, the Court cannot determine, at the motion to dismiss stage, whether in this case the duty of good faith included the obligation to present multiple offers for each component of the capital stack. "[W]hether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (internal quotation marks omitted).

The factual allegations in Dreien's complaint indicate a plausible entitlement to relief on the contract claims. Avison Young's motion to dismiss the last two counts of Dreien's complaint is therefore denied.

## IV. Conclusion

For the foregoing reasons, Defendant Avison Young's motion to dismiss is DENIED; and Plaintiff Dreien's motion to strike is DENIED.

Defendants shall file answers to the First Amended Complaint on or before October 21, 2019.

The Clerk of Court is directed to close the motions at Docket Numbers 36 and 40.

SO ORDERED.

Dated: September 30, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge